## STATE OF CONNECTICUT *v.* JOHN LEAVITT
## (3931)

HULL, SPALLONE and BIELUCH, Js.

*(One judge dissenting)*

Argued February 13—decision released August 19, 1986

*Samuel H. Teller,* with whom, on the brief, was *Randy Lynn Cohen,* for the appellant (defendant).

*Bernadette Conway,* special deputy assistant state's attorney, with whom was *Susann E. Gill,* deputy assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant appeals from his conviction by the court of the crime of disorderly conduct in violation of General Statutes § 53a-182 (a) (1). In this appeal, the defendant claims that the court erred (1) in finding that he had the specific intent necessary to com-

mit the crime of disorderly conduct, (2) in concluding that he had not proved that his conduct was justified, (3) in admitting the alleged victim's hospital record after portions of it had been deleted, and (4) in denying his motion for a new trial.

The facts are basically not in dispute. The defendant, an East Hartford police officer, is the divorced father of three children. At the time of the incident in question, the defendant's fourteen year old daughter, Jody Leavitt, lived with the defendant, his fiancee, Susan Coloccio, and Coloccio's three children. On the evening of Friday, October 5, 1984, Jody Leavitt went out for the evening with Coloccio's daughter Cheryl, who was approximately two and one-half years older than Jody. Although Jody's normal Friday night curfew was 10 p.m., two hours earlier than that of Cheryl, Susan Coloccio had arranged to extend Jody's curfew on this occasion. There was conflicting testimony regarding whether that extension was for one or two hours.

When Jody and Cheryl had not returned home by 11:35 p.m., the defendant telephoned Jody at the home where she was visiting. An argument took place between them and the conversation ended with Jody hanging up the telephone on the defendant. The testimony was conflicting on the issue of whether or not Jody's act was intentional. The defendant immediately called Jody back and demanded that she return home, stating that if she did not come home he would "come down there and drag [you] out of the house and when you come home I'll kick your ass." Frightened by what her father might do, Jody and Cheryl walked to Jody's mother's house.

When Jody did not return home by midnight, the defendant walked to the home where Jody had been visiting and he was informed that Jody and Cheryl had

left for the home of Jody's mother. The defendant returned home and contacted the police to help him look for the two girls since he did not have a car which was operating at the time. Together with another officer, the defendant checked the neighborhood for the two girls, arriving at the home of Jody's mother, Donna Leavitt, at approximately 12:15 a.m. When there was no answer at the door, the two officers rechecked the area and returned to the defendant's home a short time later. The defendant then telephoned Donna Leavitt and asked her to contact him if the two girls arrived at her home. At approximately 2 a.m., the defendant received a telephone call from Donna Leavitt who informed him that the girls were with her, that they would not be permitted to walk home, and that she refused to drive them to the defendant's house. Later, she permitted her son to drive the girls home.

When the two girls arrived home, the defendant directed Jody to sit on the living room couch. The defendant started yelling and swearing at Jody. He testified that he stated, "I don't appreciate her roaming around the streets at two o'clock in the morning. I don't appreciate her telling everybody that I'm going to kick her ass and that I told her that she would be on restriction." Jody gave the defendant dirty looks or what the defendant calls "witch stares." In response to the defendant's hollering and screaming, Jody screamed and hollered that she was afraid to come home.

The defendant then grabbed Jody by the upper arms or shoulders. The defendant started shaking her. As Jody was lying on the couch, the defendant pulled Jody upright by her hair, causing her to bang her head on the arm of the couch. Jody kicked the defendant away. The defendant took hold of Jody and turned her onto her stomach and spanked Jody with the palm of his hand, hitting her on the buttocks approximately four times.

Jody was then sent upstairs to her father's bedroom. Instead of going into her father's bedroom, Jody went into the bedroom she shared with Cheryl and directed the latter to call Donna Leavitt. Jody then began to holler. The defendant, allegedly concerned that Jody would wake up twelve year old Susan Coloccio and seven year old Rachel Leavitt, grabbed Jody in a head-lock. He "railroaded" Jody through the hallway to his bedroom. En route to the defendant's bedroom, Jody's body banged into metal cabinets in the upstairs hallway.

Upon waking at 12:30 the next afternoon, Jody called her mother who arrived at the defendant's house at 2:30 p.m. Donna Leavitt observed numerous bruises, cuts, and black and blue marks all over Jody's face, neck, jaw, and shoulders. After Donna Leavitt and Jody walked up the street to a Dunkin Donuts shop, they returned to the defendant's house, got into the car, and drove to the police station and then to Manchester Memorial Hospital. The medical diagnosis from Manchester Memorial Hospital stated "multiple contusion[s] of [the] head." Jody filed a formal complaint against the defendant on October 17, 1984.

After a trial, the court rendered an oral decision. The court found, in pertinent part, that "[a]lthough the Court is completely sympathetic with the defendant in his efforts to control his wayward daughter, it is with a great deal of regret that the court must find that the defendant is guilty as charged. His extreme physical abuse of a daughter on this particular night, as the state's attorney has claimed, went over the line. If he could have restrained himself and held back on the physical abuse, it would have been a different story. I know that the finding of guilty in this case will probably cause the defendant's former wife . . . for want of a better word, happiness. It is unfortunate that people who get divorced don't know how to let go from each other and I know that the daughter is being used

in this case as a weapon but the court has no alternative because its finding is based on the physical evidence before it and I find that the hospital record itself is most indicative of the fact that the defendant used more force than was necessary. So, I find the defendant guilty of Disorderly Conduct."

The defendant's first two claims of error, which are closely related, are (1) that the court erred in denying his motion for acquittal and in subsequently convicting him when the state had not proved each element of the crime charged beyond a reasonable doubt, and (2) that the court erred in concluding that the state had disproved the defendant's claim of justification. We disagree.

Under General Statutes § 53a-182 (a) (1)[1] "[a] person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . [e]ngages in fighting or in violent, tumultuous or threatening behavior . . . ." General Statutes § 53a-18 provides that "[t]he use of physical force upon another person which would otherwise constitute an offense is justifiable and not criminal under any of the following circumstances: (1) A parent, guardian, teacher or other person entrusted with the care and supervision of a minor . . . may use reasonable physical force upon such minor . . . when and to the extent that he reasonably believes it is necessary to maintain discipline or to promote the welfare of such minor . . . ." This case presents us with the question of determining the interaction between these two statutes.

We start our analysis by noting that justification under § 53a-18 may be invoked where the nature of the conduct proscribed is assaultive. The language in

---

[1] The defendant was charged, tried and convicted under this specific provision of the Penal Code.

that statute, which provides that "[t]he use of physical force upon another person *which would otherwise constitute an offense* is justifiable and not criminal under any of the [designated] circumstances," demonstrates the public recognition of the parental right to punish children for their own welfare. (Emphasis added.) It is clear that "[a] parent, being charged with the training and education of his child, has the right to exercise such control and restraint and to adopt such disciplinary measures for the child as will enable him to discharge his parental duty." 59 Am. Jur. 2d, Parent and Child § 24. Limits on the right of parents to punish their children do, however, exist. The common law rule and the provisions of § 53a-18 (1) require that the use of physical force administered upon a minor child be "reasonable." Commission to Revise the Criminal Statutes, Penal Code Comments, Connecticut General Statutes Annotated (West) § 53a-18; see General Statutes § 53a-18 (1). Whether that limit has been reached in any particular case is a factual determination to be made by the trier of fact.

We will assume, arguendo, that the language of § 53a-18 is extensive enough to encompass the crime of disorderly conduct in the manner charged, and that the defendant had a right as a parent to exercise that degree of control or restraint as would reasonably enable him to discharge his parental duties. We conclude, however, that such protections, whether recognized by statute or common law, do not shield the defendant under the circumstances present here.

Pursuant to § 53a-182 (a) (1), the crime of disorderly conduct consists of two elements: (1) that the defendant intended to cause, or recklessly created a risk of causing, "inconvenience, annoyance or alarm" and (2) that he did so by engaging "in fighting or in violent, tumultuous or threatening behavior . . . ." While the trial court's memorandum of decision, focusing as it

does on the injuries received by Jody in the incident, indicates clearly that the second element of disorderly conduct was present in this case, the court, by its determination of guilt, implicitly found the defendant's requisite "intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof." We, therefore, "must look to all the evidence produced in support of its decision." *State* v. *Mitchell,* 7 Conn. App. 46, 49, 507 A.2d 1017 (1986), citing *State* v. *Martin,* 2 Conn. App. 605, 614, 482 A.2d 70 (1984), cert. denied, 195 Conn. 802, 488 A.2d 457, cert. denied, 472 U.S. 1009, 105 S. Ct. 2706, 86 L. Ed. 2d 721 (1985).

The standard of review of a sufficiency of the evidence claim, the root of the defendant's first claim of error, is well established in law. We are limited in our review of the conclusions of the trier of fact. *State* v. *Zdanis,* 182 Conn. 388, 391–92, 438 A.2d 696 (1980), cert. denied, 450 U.S. 1003, 101 S. Ct. 1715, 68 L. Ed. 2d 207 (1981); *State* v. *Chetcuti,* 173 Conn. 165, 172, 377 A.2d 263 (1977); *State* v. *Benton,* 161 Conn. 404, 410, 288 A.2d 411 (1971). That review is the same whether the trier is a judge, a panel of judges, or a jury.

Upon a verdict of guilty, we review the evidence in the light most favorable to sustaining the verdict. *State* v. *Perez,* 182 Conn. 603, 606, 438 A.2d 1149 (1981); *State* v. *Zdanis,* supra, 391–92. " 'When a verdict is challenged because of insufficient evidence, the issue is whether the [trier] could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt.' " *State* v. *Carter,* 196 Conn. 36, 44, 490 A.2d 1000 (1985).

Applying the above principles to the facts and circumstances in this case, we find ample support for the trial court's implicit finding that the defendant recklessly created a risk of inconvenience, annoyance or

alarm, if not for the finding of actual intent to do so. The degree of violence, both physical and verbal, that permeated the confrontation between father and daughter, fully justifies and provides a sound legal basis for the court's conclusion that the defendant exceeded his limited right as a parent to discipline his child.

Regarding the defendant's third claim of error, that the court erred in admitting the hospital record of the injuries sustained by his daughter, it cannot be reasonably argued that an official hospital record of the injuries sustained by the victim was irrelevant where the behavior of the defendant was at issue. The determination of relevancy must be made according to reason and judicial experience and the determination of relevance requires the exercise of the court's discretion. Only when there is an abuse of the court's discretion in ruling on relevancy will reversal occur. To manifest such abuse, it must be shown that the trial judge's ruling was so arbitrary that it substantially impaired the defendant's ability to defend himself. *State* v. *Marra,* 195 Conn. 421, 438, 489 A.2d 350 (1985). Evidence is deemed relevant "if it has any tendency in reason to prove or disprove any disputed fact that is of consequence to a determination of the matter in issue." *State* v. *Briggs,* 179 Conn. 328, 332, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980). The facts of this case do not illustrate an abuse of the trial court's discretion in its admission of the hospital records as evidence of the victim's injuries.

The defendant's final claim, that the trial court erred in denying his motion for a new trial, is wholly without merit. Again, our standard of review of the trial court's denial of a motion for a new trial is limited to a determination of whether, by such denial, the court abused its discretion. *State* v. *Rothenberg,* 195 Conn. 253, 264, 487 A.2d 545 (1985). We see no such abuse here.

There is no error.

In this opinion HULL, J., concurred.

BIELUCH, J., dissenting. I dissent because I believe that the majority has fundamentally miscontrued the nature of the offense of disorderly conduct as defined by General Statutes § 53a-182 (a) (1). The focus of a disorderly conduct charge is that the defendant caused "inconvenience, annoyance or alarm," either intentionally or recklessly. Indeed, the use of physical force is not the nucleus of disorderly conduct. Thus, two people who engage in a shouting match on a public street can commit the crime of disorderly conduct without ever engaging in assaultive conduct. It is not the physical conduct of a party who "[e]ngages in fighting or in violent, tumultuous or threatening behavior" which is the nub of disorderly conduct, but the disturbing effect of such conduct on others.

In *State* v. *Duhan,* 194 Conn. 347, 481 A.2d 48 (1984), the Supreme Court ruled that the jury had the right to conclude, on the basis of the evidence presented, that the defendant was guilty of disorderly conduct under General Statutes § 53a-182 (a) (3) proscribing "unreasonable noise" for the following reasons: "[Her] conduct, if not intentional, manifested reckless indifference to the disturbance she was creating. Her conduct was disorderly not because of the language she used but because the noise she made could be found by a jury to be *unreasonably disturbing* in the particular time, place and circumstances where it occurred. . . . That is the type of conduct which falls within the statute, and the evidence was sufficient to establish that conduct." (Emphasis added.) Id., 359–60. This judicial delineation of the disorderly conduct statute is also the form of measurement for a conviction of disorderly conduct under § 53a-182 (a) "when, with intent to cause inconvenience, annoyance or alarm, or reck-

lessly creating a risk thereof, [a person]: (1) Engages in fighting or in violent, tumultuous or threatening behavior . . . ." Thus, in the present case, the defendant's conduct, if disorderly, had to be so not because of his behavior, but because of its effect on others.

Under the analysis proposed by the majority, if the defendant's use of force had been "reasonable," he would have had available to him the defense of justification under General Statutes § 53a-18 (1) regardless of the extent of the disturbing effect his actions may have had upon others. Further, the majority implies that if the defendant had been charged under any other subsection of General Statutes § 53a-182 (a), his actions would not then have been justifiable under § 53a-18 (1), since no "assaultive" conduct would have been charged against him. In short, the majority improperly focuses on a subsidiary element of one means of committing the offense of disorderly conduct, rather than upon the inconvenience, annoyance or alarm, or risk thereof, which is the heart of a disorderly conduct offense.

Section 53a-18 provides that "[t]he use of physical force upon another person *which would otherwise constitute an offense* is justifiable and not criminal under any of the [designated] circumstances." (Emphasis added.) The crime charged in this case, disorderly conduct, however, was not that the defendant used physical force upon his daughter such as would be the case if he had been charged with assault. Rather, the convicting factor of disorderly conduct is in the inconvenience, annoyance or alarm, or recklessly creating a risk thereof, caused to others. Hence, I would conclude that the justification defense of § 53a-18 (1) is inapplicable to the crime of disorderly conduct since it is a defense to crimes of physical force, rather than to the crime of inconvenience, annoyance or alarm to others, with or without assaultive conduct.

Despite my conclusion that § 53a-18 (1) does not provide a defense of justification to the charge of disorderly conduct, I would nevertheless reverse the defendant's conviction of that charge.

The only evidence presented of any inconvenience, annoyance or alarm, or reckless risk thereof, caused by the defendant's actions was of that which was caused to the daughter who he was attempting to punish. Under the majority's view, a parent cannot corporally punish a child without running the risk of having to defend a disorderly conduct charge based upon the "reasonableness" of the force used. I would conclude that where a child suffers inconvenience, annoyance or alarm by reason of her receipt of punishment from a parent, such inconvenience, annoyance or alarm should not be the basis for a charge of disorderly conduct. Punishment, by its very nature, is designed to cause inconvenience, annoyance or alarm to its recipient, and if it does not do so, it is usually ineffective.

If the objection raised to the punishment in this case is that the force used was excessive, then an assault charge would have been appropriate. The reasonableness of the force used would then have been a proper element of a defense to that charge pursuant to § 53a-18 (1). Since punishment, unlike a reward, is inflicted with the express purpose of causing inconvenience, annoyance or alarm, and since, as the majority concedes, such punishment is recognized as a valid and necessary tool in training and educating children, to which I add developing character, I would conclude that punishment must necessarily be treated as an exceptional circumstance which cannot be the basis to support a disorderly conduct charge where the only person inconvenienced, annoyed or alarmed is the child being punished. Any other approach would hamper the efforts of parents to raise their children with discipline and respect for authority, so that they may become bet-

ter citizens for their own good and welfare, as well as for the betterment of their community and society as a whole.

For the foregoing reasons, I dissent.