LOVAN C.[1] *v.* DEPARTMENT OF
CHILDREN AND FAMILIES
(AC 24580)

Lavery, C. J., and DiPentima and Peters, Js.

---

[1] We decline to identify the victim or others, i.e., the victim's mother, through whom the victim's identity may be ascertained to protect the victim's legitimate privacy interests. See General Statutes § 46b-142.

Argued September 8—officially released December 7, 2004

*George C. Springer, Jr.,* for the appellant (plaintiff).

*Carrie B. Taylor,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellee (defendant).

*Opinion*

LAVERY, C. J. The plaintiff, Lovan C., appeals from the judgment of the trial court dismissing her administrative appeal from the decision of the administrative hearings unit of the defendant, the department of children and families (department), affirming the department's substantiation of an allegation of physical abuse. On appeal, the plaintiff claims that the court improperly (1) found that she had failed to challenge the definition of "abuse," (2) concluded that her conduct constituted

physical abuse and (3) found that she had abandoned her constitutional claims.

We disagree with the legal conclusions drawn in this case. The hearing officer's failure to hold a hearing regarding the reasonableness of the corporal punishment at issue undermines the integrity of the judgment. Consequently, we reverse the judgment of the trial court dismissing the plaintiff's administrative appeal, and remand the case with direction that judgment be rendered sustaining the plaintiff's appeal and ordering the defendant to reverse the substantiation of the allegation of physical abuse for lack of substantial evidence.

The following undisputed facts are relevant to our review. On September 11, 1999, the plaintiff, responding to a commotion coming from her five year old daughter's room, found her daughter swinging and jumping on her canopy bed. Although the plaintiff rarely used physical discipline, she picked up a child's belt and spanked her daughter three times with a portion of the strap, which left a bruise approximately one inch in diameter on her thigh.[2] The incident was investigated by a police officer, who had received a complaint from the child's father. The officer determined that the plaintiff's actions "did not rise to the level of child abuse . . . ."

On September 13, 1999, the department received a referral from the family relations unit of the Superior Court. After investigating the circumstances surrounding the spanking, the department substantiated the allegation that the plaintiff had abused her child physically because the child received an injury other than by accidental means. The plaintiff subsequently

---

[2] Although the parties disagree as to whether the injury to the child was a bruise or a mark, we find that the distinction would not change the result in this case. Thus, we will refer to the injury as a bruise.

was placed on the child abuse and neglect registry.[3] She appealed from that decision to the administrative hearings unit of the department, which affirmed the department's substantiation of physical abuse. She then appealed to the Superior Court, which dismissed her appeal. This appeal followed.

We begin by articulating the standard of review for an appeal from the decision of an administrative agency. "Judicial review of [an administrative agency's] action is governed by the [Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq.] . . . and the scope of that review is very restricted. . . . With regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . Judicial review of the conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . .

---

[3] Once placed in the registry, the following are the only ways that the information is expunged: "(1) Expungement occurs under the following set [of] circumstances; (A) The report is found to be unconfirmed. (B) The report is determined to be at risk and not one of confirmed abuse or neglect. (C) The information entered was found upon investigation to be on child(ren) who legally reside in another state and two years have elapsed since the date of the entry of such information (prior to expungement, information will be forwarded to state of residence, if known). (D) If a family moves out of state before the investigation is complete, the information in the report will be kept on the registry for one year and then expunged unless substantiated by the state to which the family moved. (E) If a family moves out of state after the investigation is completed and the report is confirmed, the information will be kept in the registry until the child reaches the age of 18 at which time it will be sealed. A yearly audit will be conducted to determine which subjects of reports have turned 18 or are known to have moved from the state and the appropriate sealing action will be taken at that time. (2) A child turns 18. All information will be sealed and retained seven years and then expunged. After sealing, the information will be made available only if a sibling or offspring of the subject of the report is being inquired about thereafter." Regs., Conn. State Agencies § 17a-101-4 (b).

Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Internal quotation marks omitted.) *Unified School District No. 1* v. *Dept. of Education,* 64 Conn. App. 273, 282–83, 780 A.2d 154, cert. denied, 258 Conn. 910, 782 A.2d 1253 (2001).

General Statutes § 4-183 (j), which describes the scope of judicial review of administrative decisions, provides in relevant part: "The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and *substantial evidence* on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k)[4] of this section or remand the case for further proceedings." (Emphasis added.)

General Statutes § 46b-120 defines an "abused" child as, inter alia, one who "has been inflicted with physical

---

[4] General Statutes § 4-183 (k) provides: "If a particular agency action is required by law, the court, on sustaining the appeal, may render a judgment that modifies the agency decision, orders the particular agency action, or orders the agency to take such action as may be necessary to effect the particular action."

injury or injuries other than by accidental means . . . ." The definitions of an "abused" child found in both § 17a-101 (e)-2(c) of the Regulations of Connecticut State Agencies and § 22-12-2 of the department's policy manual mirror the statutory definition. The phrase "physical injury" is not defined in the General Statutes or the regulations;[5] however, § 34-2-7 of the department's policy manual provides examples of "physical injury," including but not limited to "death, head injuries, bruises, scratches, lacerations, internal injuries, burns, scalds . . . injuries to bone, muscle, cartilage, ligaments [and] misuse of medical treatments or therapies."

Applying those definitions, the department substantiated the abuse allegation on the ground that the plaintiff's discipline of her daughter resulted in a one inch bruise on the child's leg. In upholding the substantiation of the allegation of abuse, the hearing officer believed that although her decision would set a dangerous precedent for future cases, she nevertheless was bound by the technical definition of "abuse" as an injury to a child by nonaccidental means. In her decision, the hearing officer stated: "While [the plaintiff's] actions fit within the definition of physical abuse, this case raises a concerning issue. It was clear from the testimony presented at the hearing and in the Protocol that this was a one time occurrence of physical discipline. Both [the daughter] and her older brother reported to the investigator that their mother does not strike them for discipline. They both reported that [the plaintiff] generally talks to them to discipline. This information was confirmed by [the plaintiff and her husband] and other collaterals contacted during the investigation. In fact, after contacting other professionals involved with the family,

---

[5] The only definition of "physical injury" in the General Statutes is in the criminal section, which defines it as "impairment of physical condition or pain . . . ." General Statutes § 53a-3 (3).

there were no concerns regarding [the plaintiff's] care of her children. Even [the plaintiff's husband], who admitted to making the initial disclosure out of spite, reported that [the plaintiff] does not strike the children and [that] he has no concerns regarding her disciplining techniques. Unfortunately, the maintenance of [the plaintiff's] name on the department's registry for this one incident may negatively impact her career opportunities[6] for years to come although the reports from her children and the professionals who are involved with the family indicate [the plaintiff] presents no threat to children."

On appeal from the hearing officer's determination, the court dismissed the plaintiff's appeal. It found that the hearing officer had made a correct determination and that even though the plaintiff did not intend to harm her child, "[t]he statutes and regulations clearly proscribe nonaccidental means rather than unintended consequences." We conclude that the court improperly dismissed the plaintiff's appeal.

We are troubled by the hearing officer's substantiation of the abuse allegation, especially in light of the language in General Statutes § 53a-18. That section provides in relevant part that "[t]he use of physical force upon another person which would otherwise constitute an offense is justifiable and not criminal under any of the following circumstances: (1) A parent, guardian or other person entrusted with the care and supervision of a minor . . . may use reasonable physical force upon such minor . . . . when and to the extent that he reasonably believes such to be necessary to maintain discipline or to promote the welfare of such minor . . . ." Although § 53a-18 is a criminal statute, it "demonstrates the public recognition of the parental right to punish children for their own welfare. . . . It is clear

---

[6] The plaintiff is a schoolteacher by occupation.

that [a] parent, being charged with the training and education of his child, has the right to exercise such control and restraint and to adopt such disciplinary measures for the child as will enable him to discharge his parental duty." (Internal quotation marks omitted.) *State* v. *Leavitt*, 8 Conn. App. 517, 522, 513 A.2d 744, cert. denied, 201 Conn. 810, 516 A.2d 886 (1986).

Section 53a-18 was not specifically mentioned during the appeal to the trial court, but the plaintiff did mention our state's policy of allowing reasonable corporal punishment. Counsel for the plaintiff stated: "What's troubling about that is [that] there's an inconsistency between that concept and the notion of corporal punishment, which heretofore has not been deemed inappropriate either by statute or by judicial decision. Obviously, there are instances where you can go over the line in terms of corporal punishment, but corporal punishment in and of itself is not something that the legislature has deemed to prohibit, nor am I aware of any decision which has outright ruled that that would be inappropriate in all circumstances." The court clearly understood that argument and stated in relevant part: "So, one is to say that by statute, I have the right to impose corporal punishment and I did . . . and in doing this, I did not impose any form of abuse." The court failed to discuss or even to mention that argument in its memorandum of decision.[7]

In light of our clear policy authorizing reasonable corporal punishment, the court improperly upheld the substantiation of the physical abuse allegation in this case. The hearing officer found that the plaintiff's action was a form of corporal punishment, but failed to hold a hearing regarding the reasonableness of the plaintiff's discipline of the child before substantiating the allegation of physical abuse.

---

[7] We note that the plaintiff never requested an articulation from the court regarding its failure to address this argument.

Neither party directly advanced that rationale at oral argument. The plaintiff did claim that the court improperly concluded that her conduct constituted physical abuse. She maintains that corporal punishment is not prohibited by the state and that evidence of maltreatment must be shown for a finding of physical abuse. This court, sua sponte, raised the issues of the state's explicit protection of a parent's right to use reasonable physical force to discipline a child and the conflict between §§ 46b-120 and 53a-18.[8]

The department's position in this case, that all injuries caused to a child by his or her parent through nonaccidental means qualify as physical abuse of a child, creates considerable tension with the state's policy of allowing parents to discipline their children physically. It places at risk any parent who administers corporal punishment that potentially leaves marks on a child. If we were to adopt the statutory interpretation urged by the department, the mere application of a parent's hand to a child's backside that results in even minimal bruising would, as a matter of law, require a finding of physical abuse. Such a result would preclude any explanation or consideration of the reasonableness of the act that caused the injury. Even more alarming is that this interpretation requires a finding of physical abuse when a parent attempts to save a child from harm but, in doing so, bruises or injures the child.

We do not believe that the legislature intended such a result. It is a "well-settled principle of [statutory] construction that specific terms covering [a] given subject matter will prevail over general language of . . . another statute which might otherwise prove controlling." (Internal quotation marks omitted.) *Commission*

---

[8] Both parties were given the opportunity to file supplemental briefs on those issues. Although we asked the parties to brief two additional issues in their supplemental briefs, we have decided that we need not address them.

*on Human Rights & Opportunities* v. *Truelove & Maclean, Inc.*, 238 Conn. 337, 346, 680 A.2d 1261 (1996). Additionally, "[t]here is a presumption that the legislature, in enacting a law, does so with regard to existing relevant statutes so as to make one consistent body of law." (Internal quotation marks omitted.) *Starks* v. *University of Connecticut*, 270 Conn. 1, 31, 850 A.2d 1013 (2004). "In construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended." (Internal quotation marks omitted.) *Rocco* v. *Garrison*, 268 Conn. 541, 550, 848 A.2d 352 (2004).

Our ruling in this case is consistent with the legislature's intent to protect parents from reprisal for physically disciplining their children. "[T]here exists a parental right to punish children for their own welfare, to control and restrain them and to adopt disciplinary measures in the exercise of that right . . . ." *State* v. *Brocuglio*, 56 Conn. App. 514, 518, 744 A.2d 448, cert. denied, 252 Conn. 950, 748 A.2d 874 (2000). "Limits on the right of parents to punish their children do, however, exist. The common law rule and the provisions of § 53a-18 (1) require that the use of physical force administered upon a minor child be 'reasonable.' . . . Whether that limit has been reached in any particular case is a factual determination to be made by the trier of fact." (Citations omitted.) *State* v. *Leavitt*, supra, 8 Conn. App. 522.

Thus, we hold as follows: In a substantiation of abuse hearing, if it is shown that a child has sustained a nonaccidental injury as a result of parent administered corporal punishment, the hearing officer must determine whether the punishment was reasonable and whether the parent believed the punishment was necessary to maintain discipline or to promote the child's welfare. See *State* v. *Brocuglio*, supra, 56 Conn. App. 517–18 (discussing fact finder's obligation regarding reasonableness standard in criminal context). To aid in our

determination, we find the decisions of our sister states persuasive. "[T]he great preponderance of authority is to the effect that a parent has a right to punish a child within the bounds of moderation and reason, so long as he does it for the welfare of the child . . . ." *Carpenter* v. *Commonwealth*, 186 Va. 851, 861, 44 S.E.2d 419 (1947). The hearing officer must assess the reasonableness of the punishment in light of the child's misbehavior and the surrounding circumstances, including the parent's motive, the type of punishment administered, the amount of force used and the child's age, size and ability to understand the punishment. See *State* v. *Singleton*, 41 Wash. App. 721, 724, 705 P.2d 825 (1985); *Harbaugh* v. *Commonwealth*, 209 Va. 695, 698, 167 S.E.2d 329 (1969). In other words, the punishment must be reasonable in manner and moderate in degree.[9] If it is determined that the parent used reasonable physical force on the child in order to maintain discipline or to promote the child's welfare, a substantiation of physical abuse cannot stand.

In this case, the substantiation of the allegation of physical abuse must be reversed.[10] The hearing officer

[9] We note that expert testimony may be required to assist the fact finder in the determination of whether the corporal punishment was reasonable. See *Ahern* v. *Fuss & O'Neill, Inc.*, 78 Conn. App. 202, 209, 826 A.2d 1224 (expert testimony required when question involved goes beyond field of ordinary knowledge, experience of judges or jurors), cert. denied, 266 Conn. 903, 832 A.2d 64 (2003). Experts may have specialized information regarding the child's or parent's medical condition(s), both mental and physical, the reasonable or excessive nature of the punishment or any other factors that the fact finder believes is beyond his or her understanding.

[10] The department argues that "it [is not] surprising that a [department] hearing officer would find beating a child with a belt to be a form of child abuse. A long line of cases by this court has recognized that this type of 'discipline' is unacceptable." After a careful review of the cases cited, we find that they all involved excessive corporal punishment, physical or sexual abuse and that the use of a belt in discipline, in and of itself, was not what made the punishment unreasonable. See *In re Shamika F.*, 256 Conn. 383, 392 n.10, 773 A.2d 347 (2001) (respondents found to have substance abuse problems, to have sexually, physically abused children, including grabbing children so hard they bruised, hitting children with belts, leaving children

found that the plaintiff posed no risk to either of her children. The act at issue was a one time occurrence, not part of a pattern of physical punishment. The child was struck three times on the backside with the strap of a child's belt, resulting in a bruise. The plaintiff did not intend to hurt or to injure the child, but rather to discipline her for her misbehavior. There was no finding by the hearing officer of any apparent malice or ill motive behind the plaintiff's actions, and the child sustained only a minor injury. Therefore, we conclude that the substantiation must be reversed for lack of substantial evidence that the plaintiff's discipline was unreasonable.[11]

The judgment is reversed and the case is remanded with direction to render judgment sustaining the plaintiff's appeal and to order the defendant to reverse the substantiation of physical abuse and to remove the

without food or necessities, making children go to bathroom on floor); *In re Sheena I.*, 63 Conn. App. 713, 715–16, 722, 778 A.2d 997 (2001) (respondent burned one child by placing his arms over open flames, hit children with belt, caused bruises on child's face, had lengthy absences from home, ignored physical, sexual abuse inflicted on children by one child's father); *In re Karari J.*, Superior Court, judicial district of Middlesex, Juvenile Matters, Child Protection Session at Middletown (August 11, 2000) (child physically, sexually, emotionally abused, including beaten with belt or made to beat sisters with belt when he would not engage in sexual assaults by uncle; child beaten with belt, electrical cords, thereby sustaining extensive lesions; mother viewed as physically abusive, sexually inappropriate and failed to protect child); *In re Cesar G.*, Superior Court, judicial district of Hartford, Docket No. H12JV910000828S (May 4, 2000) (whipping with hard belt common punishment by mother resulted in multiple bruises; evidence of looped cord whippings on child's abdominal region, thighs; blunt force trauma to head led to one child's death); *In re Bianca W.F.*, Superior Court, judicial district of Middlesex, Juvenile Matters, Child Protection Session at Middletown (July 12, 1999) (child disciplined with belts, knives, coat hangers, electrical cords).

[11] That issue is dispositive. Thus, we decline to address the plaintiff's additional claims, namely, that the court improperly found that she had failed to challenge the definition of "abuse" and that her constitutional claims were abandoned.

plaintiff's name from the child abuse and neglect registry.

In this opinion the other judges concurred.