******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DAVID DUBINSKY *v*. KEVIN M. BLACK
(AC 40203)

Elgo, Bright and Mihalakos, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant attorney for legal malpractice in connection with the defendant's representation of the plaintiff in a criminal proceeding and his alleged failure to advise the plaintiff that his acceptance of a plea offer in the criminal proceeding would preclude him from subsequently pursuing an action for malicious prosecution. In the underlying criminal proceeding, the plaintiff had been charged with, inter alia, risk of injury to a child in violation of statute (§ 53-21) in connection with an incident at the defendant's home where he repeatedly struck his seven year old son with a belt in the presence of his stepdaughter. The plaintiff had entered into a conditional guilty plea in that case, which resulted in all charges being vacated and dismissed because the plaintiff complied with all the conditions of the plea agreement. The trial court in the present case granted the defendant's motion for summary judgment on the ground that the plaintiff, as a matter of law, could not prevail on the malpractice action, as probable cause existed to charge the defendant with the crime of risk of injury to a child. From the judgment rendered thereon, the plaintiff appealed to this court. *Held:*

1. The trial court did not err in granting the defendant's motion for summary judgment; the plaintiff bore the burden of establishing not only negligence on the part of the defendant in apprising him of the consequences of his guilty plea in the underlying criminal proceeding, but also that he would have prevailed in his malicious prosecution claim against the arresting officers, and the plaintiff could not meet that burden at trial, as the documentation submitted in connection with the motion for summary judgment demonstrated that no genuine issue of material fact existed as to whether, on the basis of the totality of the circumstances and facts known to them at the time, the arresting officers possessed an objectively reasonable basis to believe that the plaintiff's conduct placed both his son and stepdaughter in a situation that was likely to be psychologically injurious to them and, thus, that the plaintiff had violated § 53-21 (a), and, therefore, the plaintiff could not establish the lack of probable cause as required for a malicious prosecution action.

2. The plaintiff's claim that the arresting officers lacked probable cause in light of the parental justification defense afforded to parents under statute (§ 53a-18 [1]) was unavailing; the ultimate determination of whether the particular conduct of a parent is reasonable and, thus, entitled to protection under § 53a-18 (1) is a factual determination to be made by a trier of fact, which could not have been made by the arresting officers or the prosecutor in this case, as the arresting officers performed a preliminary and fundamentally distinct function, specifically, the determination of whether the facts then known were sufficient to justify a reasonable person to believe that reasonable grounds for prosecuting an action existed, proof of probable cause requires less than proof by a preponderance of the evidence, and, thus, because the arresting officers were not the finders of fact tasked with making a final determination as to the reasonableness of the plaintiff's conduct after an evidentiary proceeding, the parental justification defense had little bearing on the preliminary determination of probable cause made by the arresting officers who had responded to the 911 call in this case.

3. The plaintiff could not prevail on his claim that summary judgment was inappropriate because the arresting officers allegedly fabricated the claim that he had left red welts on his son's backside: the fact that there was conflicting evidence as to whether the marks existed was not material to the question of whether the arresting officers possessed probable cause to charge the plaintiff with risk of injury to a child, as actual physical injury is not a prerequisite to a conviction under the situation prong of § 53-21, and even if such evidence was discounted, no genuine issue of material fact existed as to whether the arresting

officers possessed an objectively reasonable basis to believe that the plaintiff, through his conduct, placed both minor children in a situation that was likely to be injurious to their mental health and well-being in violation of § 53-21 (a) (1); moreover, because the existence of probable cause is an absolute protection against an action for malicious prosecution, the plaintiff could not demonstrate, as he was required, that he would have been entitled to judgment in a malicious prosecution action against the arresting officers but for the defendant's professional negligence, and, therefore, the plaintiff cannot prevail on his legal malpractice claim against the defendant.

Argued May 21—officially released September 25, 2018

*Procedural History*

Action to recover damages sustained as a result of the defendant's alleged legal malpractice, and for other relief, brought to the Superior Court in the judicial district of Bridgeport, where the court, *Krumeich, J.*, granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*John R. Williams*, for the appellant (plaintiff).

*Bridgitte E. Mott*, with whom, on the brief, was *Thomas P. O'Dea, Jr.*, for the appellee (defendant).

*Opinion*

ELGO, J. The plaintiff, David Dubinsky, appeals from the summary judgment rendered in favor of the defendant, Kevin M. Black, in this legal malpractice action predicated on the defendant's alleged failure to advise the plaintiff that his acceptance of a plea offer in a criminal proceeding would preclude him from subsequently pursuing an action for malicious prosecution. In rendering summary judgment, the court concluded, as a matter of law, that the plaintiff could not prevail on such an action, as probable cause existed to charge him with the crime of risk of injury to a child in violation of General Statutes § 53-21. The plaintiff now challenges the propriety of that determination. We affirm the judgment of the trial court.

Mindful of the procedural posture of the case, we set forth the following facts as gleaned from the pleadings, affidavits and other proof submitted, viewed in a light most favorable to the plaintiff. See *Martinelli* v. *Fusi*, 290 Conn. 347, 350, 963 A.2d 640 (2009). On the morning of Saturday, June 23, 2012, officers from the Fairfield Police Department (department) responded to a 911 call from the plaintiff's then wife, Miriam Dubinsky,[1] regarding an incident at their home in which the plaintiff shoved her onto a bed and repeatedly struck their minor son, Jake, with a belt in the presence of the plaintiff's minor stepdaughter, Abigail.[2] The plaintiff, at that time, was arrested and charged with one count of risk of injury to a child in violation of § 53-21, one count of assault in the third degree in violation of General Statutes § 53a-61, and three counts of disorderly conduct in violation of General Statutes § 53a-182.[3]

Later that day, department officials filed a request for a probable cause determination with the Superior Court. Accompanying that request were copies of the police incident report, an arrest affidavit signed by Officer John Tyler, a family violence offense report, and a written statement by Miriam regarding the incident. After reviewing those materials that evening, the court, *Bellis, J.*, concluded that probable cause existed and signed the request. The plaintiff was arraigned on Monday, June 25, 2012.

Following his arraignment, the plaintiff retained the services of the defendant, an attorney licensed to practice law in this state, who represented the plaintiff in connection with the aforementioned criminal charges. Plea negotiations with the state followed. The state ultimately made an offer, pursuant to which the plaintiff would enter a conditional plea of guilty to the charges of breach of peace and disorderly conduct. The plea offer further provided that, if the plaintiff complied with the terms of a protective order issued by the court and completed a family violence education program, all charges would be vacated and dismissed. The defendant

encouraged the plaintiff to accept that conditional guilty plea offer and, on August 30, 2012, the plaintiff so pleaded before the court. The plaintiff thereafter complied with the terms of the plea agreement and all charges against him were dismissed.

On August 14, 2014, the plaintiff commenced the present legal malpractice action, claiming that the defendant failed to advise him that acceptance of the plea offer would preclude him from instituting a malicious prosecution action against the arresting officers.[4] In his answer, the defendant denied the substance of that allegation. The defendant also raised the special defenses of accord and satisfaction, waiver, laches, and comparative negligence, all of which the plaintiff denied.

The defendant filed a motion for summary judgment on January 3, 2017, in which he argued that the plaintiff could not establish the causation element of his legal malpractice action. More specifically, the defendant claimed that no genuine issue of material fact existed as to whether the arresting officers possessed probable cause to institute the underlying criminal action. The defendant's motion was accompanied by seventeen exhibits, including copies of the police incident report and Miriam's signed statement to the police made on the date of the incident, transcripts from the underlying criminal proceedings, and deposition transcripts of various individuals. In opposing that motion for summary judgment, the plaintiff submitted only one exhibit—a copy of the January 28, 2013 decision, issued following an evidentiary hearing, of the administrative hearings unit of the Department of Children and Families on the issue of the plaintiff's physical neglect of Jake.[5]

The court rendered summary judgment in favor of the defendant on February 21, 2017. In its memorandum of decision, the court stated in relevant part that the plaintiff "would not have prevailed in any action alleging . . . malicious prosecution . . . because he could not prove want of probable cause . . . . Therefore, [the plaintiff] would not have been able to prove that [the defendant's] failure to advise him of the consequences of the plea agreement caused him harm when he lost his right to recover in a civil litigation for . . . malicious prosecution." (Citations omitted.) From that judgment, the plaintiff now appeals.

I

As a preliminary matter, we note the well established standard that governs our review of the trial court's decision to grant summary judgment. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion

for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . [T]he moving party . . . has the burden of showing the absence of any genuine issue as to all the material facts. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the [nonmoving] party must present evidence that demonstrates the existence of some disputed factual issue. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *Lucenti* v. *Laviero*, 327 Conn. 764, 772–73, 176 A.3d 1 (2018).

The present action is one sounding in legal malpractice. As our Supreme Court has explained, "[i]n legal malpractice actions, the plaintiff typically proves that the defendant attorney's professional negligence caused injury to the plaintiff by presenting evidence of what would have happened in the underlying action had the defendant not been negligent. This traditional method of presenting the merits of the underlying action is often called the 'case-within-a-case.'" *Margolin* v. *Kleban & Samor*, *P.C.*, 275 Conn. 765, 775 n.9, 882 A.2d 653 (2005). To prevail, "the plaintiff must prove that, in the absence of the alleged breach of duty by [his] attorney, the plaintiff would have prevailed [in] the underlying cause of action and would have been entitled to judgment." (Internal quotation marks omitted.) *Bozelko* v. *Papastavros*, 323 Conn. 275, 284, 147 A.3d 1023 (2016); see also *Grimm* v. *Fox*, 303 Conn. 322, 352, 33 A.3d 205 (2012) (*Palmer, J.*, concurring) ("[T]o prevail on his claim against the defendants, the plaintiff [must] prove not only that the defendants were negligent in their handling of his [action], but also that [the action] would have been successful if the defendants had represented him competently. In the absence of such proof, the plaintiff could not establish that his alleged damages . . . were the result of the defendants' negligence . . . ."). Accordingly, the plaintiff in the present case bore the burden of establishing not only negligence on the part of the defendant in apprising him of the consequences of his guilty plea in the underlying criminal proceeding, but also that he would have prevailed in his malicious prosecution claim against the arresting officers. We therefore focus our attention on that cause of action.

"Malicious prosecution is a tort arising out of a criminal complaint that is intended to protect an individual's interest in freedom from unjustifiable and unreasonable litigation . . . ." (Internal quotation marks omitted.) *Lefebvre* v. *Zarka*, 106 Conn. App. 30, 35, 940 A.2d 911 (2008). An essential element of that action is proof that

the defendant acted without probable cause; see *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP,* 281 Conn. 84, 94, 912 A.2d 1019 (2007); as "[t]he existence of probable cause is an absolute protection against an action for malicious prosecution . . . ." *Brodrib* v. *Doberstein,* 107 Conn. 294, 296, 140 A. 483 (1928). Our Supreme Court has defined probable cause in this context as "the knowledge of facts sufficient to justify a reasonable [person] in the belief that he has reasonable grounds for prosecuting an action. . . . Mere conjecture or suspicion is insufficient. . . . Moreover, belief alone, no matter how sincere it may be, is not enough, since it must be based on circumstances which make it reasonable. . . . Although want of probable cause is negative in character, the burden is [on] the plaintiff to prove affirmatively, by circumstances or otherwise, that the defendant had no reasonable ground for instituting the criminal proceeding." (Citation omitted; internal quotation marks omitted.) *Brooks* v. *Sweeney,* 299 Conn. 196, 211, 9 A.3d 347 (2010). We agree with the trial court that, even when construing the pleadings, affidavits, and other proof submitted in a light most favorable to him, the plaintiff cannot meet that burden at trial.

As the Supreme Court has observed, "[i]t is clear that [t]he general purpose of § 53-21 is to protect the physical *and* psychological well-being of children from the potentially harmful conduct of [others] . . . ." (Emphasis added; internal quotation marks omitted.) *State* v. *Nathan J.,* 294 Conn. 243, 251, 982 A.2d 1067 (2009). That statute "comprise[s] . . . two distinct prongs, the situation prong and act prong . . . ." (Internal quotation marks omitted.) *State* v. *Owens,* 100 Conn. App. 619, 635, 918 A.2d 1041, cert. denied, 282 Conn. 927, 926 A.2d 668 (2007). Section 53-21 (a) "prohibits two different types of behavior: (1) deliberate indifference to, acquiescence in, or the creation of *situations* inimical to the [child's] moral or physical welfare . . . and (2) *acts* directly perpetrated on the person of the [child] and injurious to his [or her] moral or physical well-being." (Emphasis in original; citations omitted; internal quotation marks omitted.) *State* v. *Robert H.,* 273 Conn. 56, 65, 866 A.2d 1255 (2005). "Cases construing § 53-21 have emphasized this clear separation between the two parts of the statute . . . ." (Internal quotation marks omitted.) Id.

Under the situation prong, the state is not required to prove that the child in question sustained an actual injury. See *State* v. *Gewily,* 280 Conn. 660, 669, 911 A.2d 293 (2006) ("actual injury is not an element of the 'situation' prong of § 53-21 [a] [1]"), and cases cited therein. With particular respect to the potential for harm to the mental health of a child, "the fact finder is not required to make a determination as to the precise nature or severity of the injury . . . rather, the fact finder need only decide whether the accused placed the

child in a situation that was likely to be psychologically injurious to that child." (Citation omitted; internal quotation marks omitted.) Id. The pleadings, affidavits and other proof submitted in the present case confirm that no genuine issue of material fact exists as to whether the arresting officers possessed probable cause to believe that the plaintiff's conduct on June 23, 2012, placed both Jake and Abigail in such a situation.[6]

The police incident report, which was submitted as an exhibit to the defendant's motion for summary judgment, indicates that when the arresting officers arrived at the scene, they were "met at the door by Miriam and [Abigail] and both were crying, shaking, and visibly upset." In his deposition testimony, which also was submitted as an exhibit to the motion for summary judgment, Officer Tyler stated that Miriam and Abigail had "a hard time talking" and appeared "as if [they] witnessed a horrible accident . . . ." Both Miriam and Abigail had witnessed the plaintiff spanking his son Jake, who was seven years old at the time, with a folded belt.

Abigail described the spanking to officers as "very disturbing," stating that the plaintiff had "wound up his arm and hit him hard, several times." Miriam likewise informed the officers that, after placing the boy over his knee, the plaintiff hit him "hard several times. I thought he was way out of line and I tried to stop it but he pushed me hard [three] or [four] times in the chest, until I fell on the bed." The officers, at that time, observed redness on the upper chest area of Miriam's body.

In the written statement that she provided to the police on the day of the incident, which was submitted as an exhibit to the summary judgment motion, Miriam indicated that Jake was "screaming" as the plaintiff repeatedly struck him with the belt. She further stated: "I will not have my children subject to or witness to violence. [The plaintiff] scared me and [Abigail]. There has been [an] increase in underlying anxiety and anger with [the plaintiff] and this was the worst he has ever exhibited." Abigail similarly reported to the officers that the plaintiff "raises his voice all the time and we are on edge all the time. He has never hit me but I fear he would." In making their probable cause determination, the arresting officers properly could rely on the statements made by Miriam and Abigail. See *State* v. *Colon*, 272 Conn. 106, 152 n.15, 864 A.2d 666 (2004) ("the police had probable cause to arrest the defendant as a result of the statement of the victim's sister" who witnessed the crime), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005); see also *Iocovello* v. *City of New York*, 701 Fed. Appx. 71, 72 (2d Cir. 2017) ("[a] police officer may rely on the statements of a putative victim or witness to determine if probable cause exists for an arrest, unless the officer is presented with a

reason to doubt the witness' veracity").

As Tyler noted during his deposition, the plaintiff is "a big guy"; the plaintiff acknowledged in his deposition testimony, which also was before the court, that he was 6'3" tall and weighed approximately 235 pounds. The police incident report also indicates that when the officers spoke with the plaintiff, he acknowledged striking Jake with the belt and pushing Miriam onto the bed. The plaintiff at that time cautioned: "Look, you or any other [department] officer [are] not going to tell me how to discipline my son. There is nothing wrong with using a belt. Put this on [the] record, OK—I will use the belt again and I will spank my son again."

The police incident report also notes that Tyler spoke with Jake and asked him if he was okay. In response, the boy began to cry and then stated, "[m]y butt really hurts. It hurts sitting here."

"Probable cause is the knowledge of facts sufficient to justify a reasonable person in the belief that there are reasonable grounds for prosecuting an action." *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 281 Conn. 94. "[T]he probable cause determination is, simply, an analysis of probabilities. . . . The determination is not a technical one, but is informed by the factual and practical considerations of everyday life on which reasonable and prudent [persons], not legal technicians, act." (Internal quotation marks omitted.) *State* v. *Brown*, 279 Conn. 493, 523, 903 A.2d 169 (2006). For that reason, probable cause "is a flexible common sense standard that does not require the police officer's belief to be correct or more likely true than false. . . . [W]hile probable cause requires more than mere suspicion . . . the line between mere suspicion and probable cause necessarily must be drawn by an act of judgment formed in light of the particular situation and with account taken *of all the circumstances*. . . . The existence of probable cause does not turn on whether the defendant could have been convicted on the same available evidence." (Citations omitted; emphasis added; internal quotation marks omitted.) *Washington* v. *Blackmore*, 119 Conn. App. 218, 221–22, 986 A.2d 356, cert. denied, 296 Conn. 903, 991 A.2d 1104 (2010). In the context of the motion for summary judgment filed by the defendant in the present case, the critical question is whether the plaintiff can demonstrate that the officers had no objectively reasonable basis to believe that an offense has been committed.

The documentation submitted in connection with that motion convinces us that no genuine issue of material fact exists as to whether the arresting officers possessed an objectively reasonable basis to believe that the plaintiff's conduct on June 23, 2012, placed both Jake and Abigail in a situation that was likely to be psychologically injurious to them. Abigail watched as the plaintiff wound up his arm and then struck Jake

with the belt several times, which reduced her to tears and left her shaking and visibly upset when officers arrived at the residence soon thereafter. Abigail, at that time, described the incident as "very disturbing" and informed officers that she was fearful that the plaintiff would hit her in the future. Seven year old Jake not only bore the brunt of the plaintiff's blows with the belt, but also watched the plaintiff shove his mother to the bed when she attempted to intervene on his behalf. When the officers spoke with Jake and asked if he was okay, the boy began to cry and then confessed that his "butt really hurts," so much so that it pained him to be seated. In her written statement, Miriam informed the officers that Jake was screaming as the plaintiff struck him and that the plaintiff's behavior had frightened Abigail. Miriam also indicated in that statement that she "will not have my children subject to or witness to violence." Furthermore, the officers in the present case were summoned to the residence by a 911 call that included a report of domestic violence,[7] and the plaintiff thereafter responded to the officer's questions in a defiant manner, insisting that they could not "tell [him] how to discipline [his] son" and imploring them to "[p]ut this on the record . . . I will use the belt again and I will spank my son again."

Viewing the record before us in a light most favorable to the plaintiff, we conclude that the plaintiff has not demonstrated the existence of a genuine issue of material fact as to whether, on the totality of the circumstances and the facts known to them at the time, the arresting officers lacked an objectively reasonable basis to believe that he had violated the situational prong of § 53-21 (a). The plaintiff, therefore, cannot establish the probable cause element of an action for malicious prosecution.

II

The plaintiff nonetheless argues that the arresting officers lacked probable cause in light of the protection afforded parents under General Statutes § 53a-18 (1). That statute provides in relevant part that "[t]he use of physical force upon another person which would otherwise constitute an offense is justifiable and not criminal under any of the following circumstances . . . (1) A parent, guardian or other person entrusted with the care and supervision of a minor . . . may use reasonable physical force upon such minor . . . when and to the extent that he reasonably believes such to be necessary to maintain discipline or to promote the welfare of such minor or incompetent person. . . ."

It is well established that § 53a-18 (1) functions as a defense under our law. Commonly known as "the parental justification defense"; *State* v. *Nathan J.*, supra, 294 Conn. 253; § 53a-18 (1) operates as a "shield" in certain circumstances in recognition of "the parental right to punish children for their own welfare." *State* v. *Leavitt,*

8 Conn. App. 517, 522, 513 A.2d 744, cert. denied, 201 Conn. 810, 516 A.2d 886 (1986). The statute "enumerates circumstances in which physical force, which would otherwise constitute an offense, is justifiable and thus not criminal." *State* v. *Nathan J.*, supra, 253. As our Supreme Court has explained: "The parental justification defense . . . provides that [physical] force is not criminal, as long as it is reasonable, when directed by a parent, or someone standing in loco parentis, against a child for disciplinary purposes. If the force is unreasonable . . . however, the parental justification [defense] does not apply and the force may constitute risk of injury." Id., 260.

Significantly, the ultimate determination of whether the particular conduct of a parent is reasonable, and thus entitled to the protection of § 53a-18 (1), "is a factual determination to be made by the trier of fact." *State* v. *Brocuglio*, 56 Conn. App. 514, 518, 744 A.2d 448, cert. denied, 252 Conn. 950, 748 A.2d 874 (2000); *State* v. *Leavitt*, supra, 8 Conn. App. 522. Because "the defense only applies to '*reasonable* physical force' to the extent '*reasonably* . . . necessary to maintain discipline or to promote the welfare' of the child"; *State* v. *Nathan J.*, supra, 294 Conn. 255 (emphasis in original); the factual question of reasonableness cannot be determined by the arresting officers or the prosecutor in a given case, but rather remains exclusively the domain of the trier of fact. Id., 259.

Indeed, the arresting officers in the present case performed a preliminary, and fundamentally distinct, function—namely, the determination of whether the facts then known were sufficient to justify a reasonable person to believe that reasonable grounds for prosecuting an action existed. See *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 281 Conn. 94. For that reason, our Supreme Court has recognized that "[t]he existence of probable cause does not turn on whether the defendant could have been convicted on the same available evidence"; *State* v. *Trine*, 236 Conn. 216, 237, 673 A.2d 1098 (1996); particularly because "proof of probable cause requires less than proof by a preponderance of the evidence." *State* v. *Munoz*, 233 Conn. 106, 135, 659 A.2d 683 (1995). As the United States Court of Appeals for the Second Circuit has noted, "[i]t would be unreasonable and impractical to require that every innocent explanation for activity that suggests criminal behavior be proved wrong, or even contradicted, before an arrest warrant could be issued with impunity. . . . It is up to the factfinder to determine whether a defendant's story holds water, not the arresting officer. . . . Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." (Citations omitted.) *Krause* v. *Bennett*, 887 F.2d 362, 372

(2d Cir. 1989).

Had the plaintiff elected to proceed to trial in the underlying criminal proceeding, the finder of fact ultimately may have found his conduct on June 23, 2012, to be reasonable, and thus subject to the protection of the parental justification defense contained in § 53-18 (1). That defense has little bearing, however, on the preliminary determination of probable cause made by the arresting officers who responded to the 911 call in the present case.

III

Also misplaced is the plaintiff's reliance on this court's decision in *Lovan C.* v. *Dept. of Children & Families*, 86 Conn. App. 290, 860 A.2d 1283 (2004). Unlike the present case, which involves a probable cause determination made soon after the incident in question, *Lovan C.* involved a decision of the administrative hearings unit of the Department of Children and Families substantiating an allegation of physical abuse by a parent who had engaged in corporal punishment of her child. Id., 292–93. In concluding that "substantiation must be reversed for lack of substantial evidence that the plaintiff's discipline was unreasonable"; id., 301; this court emphasized that the hearing officer improperly "failed to hold a hearing regarding the reasonableness of the plaintiff's discipline of the child before substantiating the allegation of physical abuse." Id., 297. In such proceedings, the hearing officer of the administrative hearings unit of the Department of Children and Families is the finder of fact that makes that reasonableness determination as part of its final decision following a hearing. See id., 299–300; *State* v. *Nathan J.*, supra, 294 Conn. 259. We reiterate that, in the present case, the arresting officers were *not* the finders of fact tasked with making a final determination as to the reasonableness of the plaintiff's conduct after an evidentiary proceeding. *Lovan C.*, therefore, is inapposite to the present case.

IV

As a final matter, we note that the plaintiff also argues that summary judgment was inappropriate because the arresting officers allegedly "fabricated the claim [in the police incident report] that he had left red welts on his son's backside . . . ."[8] That contention is unavailing. In its memorandum of decision, the trial court acknowledged that, although the record contained documentation substantiating the existence of such marks,[9] the plaintiff disputed their existence. The court nevertheless found that the "differences in the various accounts [as to whether the marks existed] are not material" to the question of whether the arresting officers possessed probable cause to charge the plaintiff with risk of injury to a child. We concur. Actual physical injury is not a prerequisite to a conviction under the situation prong

of § 53-21. *State* v. *Gewily*, supra, 280 Conn. 669. In reviewing the defendant's motion for summary judgment, we view the pleadings, affidavits and other proof submitted in a light most favorable to the plaintiff, and, therefore, have not considered the presence of red welts or bruising on Jake's buttocks in our analysis of whether the arresting officers possessed probable cause. Even discounting such evidence, we nonetheless are convinced that no genuine issue of material fact exists as to whether the arresting officers possessed an objectively reasonable basis to believe that the plaintiff, through his conduct on June 23, 2012, placed both Jake and Abigail in a situation that was likely to be injurious to their mental health and well-being in violation of § 53-21 (a) (1). Because the existence of probable cause is an absolute protection against an action for malicious prosecution; *Bhatia* v. *Debek*, 287 Conn. 397, 411, 948 A.2d 1009 (2008); the plaintiff cannot demonstrate, as he must, that he would have been entitled to judgment in a malicious prosecution action against the arresting officers but for the defendant's professional negligence. See *Bozelko* v. *Papastavros*, supra, 323 Conn. 284. The plaintiff therefore cannot prevail on his legal malpractice claim against the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] We note that the plaintiff's former spouse is identified as Miriam Edelson in certain documents in the record before us. For convenience, we refer to her as Miriam in this opinion.

[2] The police incident report indicates that Jake was seven years old and Abigail was fifteen years old on June 23, 2012.

[3] At oral argument before this court, the plaintiff's counsel confirmed that this appeal pertains only to the risk of injury charge.

[4] Although his complaint also alleged an impairment of his ability to pursue an action for false arrest, the plaintiff has pursued no such claim in this case. For example, in his memorandum of law in opposition to the defendant's motion for summary judgment, the plaintiff acknowledged that Judge Bellis had made a finding that probable cause existed at the time of his arrest. The plaintiff nonetheless stated: "While that finding might be relevant if the plaintiff were suing for false arrest, it is meaningless in an action for malicious prosecution . . . ." The plaintiff likewise has advanced no claim on appeal regarding an action for false arrest, and instead has focused entirely on the impairment of his ability to pursue a malicious prosecution action. In his appellate brief, the plaintiff notes that he "had informed [the defendant] of his desire to sue . . . for malicious prosecution" and thereafter discusses certain legal principles related thereto. He has not provided any citation to, or discussion of, legal authority regarding actions for false arrest. See *Connecticut Light & Power Co.* v. *Gilmore*, 289 Conn. 88, 124, 956 A.2d 1145 (2008). Accordingly, we confine our review to the plaintiff's claims regarding the impairment of his ability to initiate a malicious prosecution action.

We further note that the plaintiff, in his complaint, averred that he had "explained to the defendant from the outset that . . . he wished not only to be vindicated of the said allegations [in the underlying criminal proceeding] but to sue *the person who had accused him, and the arresting officers* . . . ." (Emphasis added.) In his appellate brief, the plaintiff reiterated that he had informed the defendant "of his desire to sue the arresting officers and [Miriam] for malicious prosecution." At oral argument before this court, the plaintiff's counsel abandoned any such claim with respect to Miriam, conceding that it was not a "viable lawsuit" and stating that the plaintiff was not pursuing a claim against Miriam. The present appeal, therefore, concerns the viability of a malicious prosecution action against the arresting officers.

[5] Although it reversed an earlier substantiation of physical neglect, that administrative decision also noted that the June 23, 2012 incident "was no doubt an ugly scene, and one which likely will have a lasting impact on the family." It also noted that, when the police arrived at the residence that day, the plaintiff "became flippant and belligerent with the responding officers. His behavior appeared erratic at that time." The plaintiff's belligerent behavior toward law enforcement responding to a 911 call also is documented in the police incident report, which provides necessary context for the probable cause determination made by the arresting officers.

[6] During his deposition testimony, Officer Tyler indicated that the risk of injury charge was premised on the "dangerous situation" created by the plaintiff's conduct.

[7] The police incident report states in relevant part that Miriam "called 911 to report that her husband . . . is beating [their] seven year old son . . . with a belt."

[8] The police incident report states in relevant part that Miriam and Sergeant Edward Weihe "inspected Jake's buttocks and they were cherry red, with welts. . . ." In his deposition, the plaintiff testified: "I don't believe there [were] any marks [on Jake's body]. I don't see how there could have been. . . . [T]here wasn't any marks . . . the police lied, lied, and . . . there were no marks on Jake, on Jake's butt." In his appellate brief, the plaintiff alleges that the arresting officers "lied about the alleged 'red welts' " in the police incident report.

[9] In her deposition testimony, which was submitted in support of the defendant's motion for summary judgment, Miriam stated that she inspected Jake's buttocks soon after the incident and observed red marks on his buttocks. Miriam further testified that she observed "black and blue marks" on her son's body a day or two after the incident transpired. In response, she took him to department headquarters, where an officer took photographs of his body. Three photographs depicting bruising on Jake's buttocks were submitted to the court in support of the defendant's motion for summary judgment, and are contained in the record before us.