******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# 10 MARIETTA STREET, LLC *v.* MELNICK PROPERTIES, LLC, ET AL.
## (AC 44833)

Prescott, Elgo and Cradle, Js.

*Syllabus*

The plaintiff, T Co., sought to recover damages for, inter alia, environmental contamination to a parcel of land it owned, allegedly caused by hazardous materials from a drainpipe that extended onto the land from an adjacent parcel of property owned by the defendant M Co. The defendants filed a motion for summary judgment, claiming that T Co. could not meet its burden of production with respect to any of its causes of action and arguing that T Co.'s responses to certain discovery failed to provide them with clear and explicit details about the alleged contamination of T Co.'s property. The plaintiff filed an objection to the defendants' motion for summary judgment, a supporting memorandum of law, and several exhibits, including an affidavit from a licensed environmental professional who had conducted an environmental study of T Co.'s property. At the hearing on the motion, T Co. asserted that it had presented sufficient evidence to raise a genuine issue of material fact as to whether hazardous material from M Co.'s property had contaminated T Co.'s property. The trial court granted the motion for summary judgment, and T Co. appealed to this court. *Held* that the trial court improperly granted the defendants' motion for summary judgment, this court having concluded that there were genuine issues of material fact, and the trial court's conclusions to the contrary were not legally and logically correct and were not supported by the record: to avoid summary judgment, T Co. was not required to prove its causes of action to the satisfaction of the trial court, and the defendants did not attempt to delineate or explain the substantive law governing any of T Co.'s common-law or statutory claims, failing to set forth how the purported deficiencies in the evidentiary record necessarily established a lack of a genuine issue of material fact with respect to any particular element of any of the causes of action alleged in T Co.'s complaint; moreover, rather than demonstrating how they met the legal standard for granting a motion for summary judgment, the defendants' motion principally was founded on their argument that T Co. failed to answer certain interrogatories served on it, and, to the extent the court's granting of summary judgment focused too narrowly on this argument and thus could be construed as sanctioning T Co. for some perceived failure to comply with discovery, summary judgment was a wholly improper vehicle by which to do so; furthermore, even if the defendants met their initial burden of demonstrating the absence of any genuine issue of material fact, T Co. presented evidence in opposition to the motion for summary judgment that demonstrated its entitlement to a trial, as a trier of fact might reasonably infer from the evidence presented that contaminants in T Co.'s soil came from the drainpipe attached to the defendants' building and that, given their exclusive control over the property, the defendants, either directly or through negligence, were responsible for allowing the contaminants to enter the drain.

Argued April 11—officially released November 1, 2022

*Procedural History*

Action to recover damages for, inter alia, the defendants' alleged negligence, and for other relief, brought to the Superior Court in the judicial district of New Haven, where Kathleen A. Bednarcik was cited in as a party defendant; thereafter, Kathleen A. Bednarcik, executrix of the estate of George Bednarcik, was substituted for the defendant George Bednarcik; subsequently, the court, *Wahla, J.*, granted the motion for

summary judgment filed by the defendants, from which the plaintiff appealed to this court. *Reversed*; *further proceedings*.

*Leonard C. Reizfeld*, for the appellant (plaintiff).

*Joshua A. Winnick*, for the appellees (defendants).

*Opinion*

PER CURIAM. The plaintiff, 10 Marietta Street, LLC, appeals from the summary judgment rendered by the trial court in favor of the defendants, Melnick Properties, LLC, Kenneth Maratea, Ellen Maratea, and Kathleen Bednarcik.[1] On appeal, the plaintiff claims that the court improperly determined that no genuine issue of material fact existed and the defendants were entitled to judgment as a matter of law on all thirty counts of the plaintiff's operative complaint, which seeks to hold the defendants responsible for environmental contamination of the plaintiff's property. We agree with the plaintiff that genuine issues of material fact exist regarding whether one or more of the defendants are legally responsible for the alleged contamination of the plaintiff's land and its groundwaters. Accordingly, we reverse the judgment of the trial court.

The following facts and procedural history are gleaned from the pleadings, affidavits, and other proof submitted, viewed in a light most favorable to the plaintiff. See *Dubinsky* v. *Black*, 185 Conn. App. 53, 56, 196 A.3d 870 (2018). The plaintiff owns a vacant parcel of land known as 0 Marietta Street in Hamden. The defendant Melnick Properties, LLC, owns an adjacent parcel of real property known as 24 Marietta Street, on which is a commercial building that has been used for a number of purposes, including as an auto repair facility. The remaining defendants are prior owners of 24 Marietta Street and/or were involved in managing the property over a substantial period of time.

On September 25, 2019, the plaintiff initiated the present action. The operative complaint, filed on October 6, 2020, contains thirty counts sounding in negligence, negligence per se, trespass, nuisance, and violations of General Statutes §§ 22a-16[2] and 22a-452,[3] and the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), as amended by the Superfund Amendments and Reauthorization Act of 1986 (SARA), 42 U.S.C. § 9601 et seq.[4] The complaint contains a series of general allegations that are incorporated by reference as part of each count of the complaint. The gravamen of these general allegations is that the defendants knew or should have known that hazardous and toxic chemicals, including petroleum products, solvents, and metals, have flowed from the building on 24 Marietta Street through a drainpipe that extends underground from the 24 Marietta Street building onto the plaintiff's property.[5] The plaintiff asks for compensatory and punitive damages for the alleged harm caused to its property, and for declaratory and injunctive relief requiring the defendants to remediate the pollution and to remove the drainpipe.

On December 14, 2020, the defendants filed a joint motion asking the court to render summary judgment

in their favor as to all counts of the complaint. The sole basis on which the defendants claimed entitlement to summary judgment was that the plaintiff could not meet its burden of production with respect to any of the causes of action alleged in the complaint, and "[t]he plaintiff's inability to meet its burden of production means, ipso facto, that it cannot prove the elements of the seven causes of action alleged." The defendants stated in their accompanying memorandum of law that they had served written interrogatories on the plaintiff that sought further details regarding the primary allegation in the complaint that the defendants knew or should have known that contamination of the plaintiff's property was occurring as the result of "dangerous, hazardous and toxic levels of oil, solvents, hydrocarbons, metals and the like . . . being flushed down the floor drains and onto the abutting property and into the ground water." The defendants argue that the plaintiff's responses failed to provide them with "clear and explicit details about the alleged contamination of the plaintiff's property, including precisely what happened, how it happened and when it happened." The defendants argue that the plaintiff "has no facts to produce in support of the dispositive allegation of its complaint" and is unable to proffer any evidence that the alleged flushing of hazardous materials through the drainpipe in question ever occurred.[6] The defendants provided limited legal analysis explaining how the purported evidentiary lacuna that it identified specifically related to the different causes of action alleged in the complaint or how the lack of direct evidence regarding how contaminants were introduced to the defendants' floor drain entitled the various defendants to judgment as a matter of law under any of the disparate theories of recovery advanced by the plaintiff.

The plaintiff filed an objection to the defendants' motion for summary judgment, a supporting memorandum of law, and several exhibits, including an affidavit from a licensed environmental professional, Darrick F. Jones, who had conducted an environmental study of the plaintiff's property.[7] Jones averred in his affidavit that "there was a buried metal pipe [that] exited the abutting building at 24 Marietta Street onto [the plaintiff's property] . . . ." He further averred that the metal pipe extended about two feet onto the plaintiff's property before transitioning first into "Orangeburg" piping and then PVC plastic piping. According to Jones, these different piping sections were not secured together well and, where there were breaks, "a strong smell of oil contaminants was emanating from the surrounding ground." Samples were collected from the ground and from within the pipe itself and tested by a laboratory. Jones' report, which was attached to the affidavit, indicated that the contaminants found in the pipe were the same type, just in higher concentrations, as the contaminants found in the surrounding soil on the plain-

tiff's property.

On June 9, 2021, the parties appeared before the court for a virtual hearing on the defendants' motion for summary judgment. The plaintiff took the position that, contrary to the defendants' arguments, it had no obligation to prove who had dumped what down the defendants' drains or when but, instead, merely had to prove that hazardous materials went down the defendants' floor drains, through the drainpipe, and onto the plaintiff's property while the defendants had exclusive ownership or control of the property and the drainage system. The plaintiff asserted that it had presented sufficient evidence to raise a genuine issue of material fact as to whether hazardous materials from the defendants' property had contaminated the plaintiff's property, directing the court's attention to Jones' affidavit. The plaintiff argued: "So . . . it's an issue of strict liability, joint and several liability. There is nothing for the plaintiff to prove as far as who dumped what, when . . . down the defendants' floor drains. It's strict liability, Your Honor. The law is clear, both federal and state."[8]

On July 2, 2021, the court issued a "postcard" order granting the motion for summary judgment. The postcard order contains the court's entire memorandum of decision. After first reciting boilerplate law regarding the appropriate standard of review, the memorandum of decision provided the following legal analysis: "The defendants filed the interrogatories and request for production pertaining to the plaintiff's allegations in its complaint, [e]specially as to the paragraph 12, dangerous, hazardous and toxic levels of oil, solvents, hydrocarbons, metals and the like . . . being flushed down the floor drains and onto the abutting property and into the ground water.

"The [court agrees] with the defendants that the answers to these questions should have provided clear and explicit details about the alleged contamination of the plaintiff's property, including precisely what happened, how it happened and when it happened, and/or the sources of and the basis of its allegation. The plaintiff has not provided any such information. Except the plaintiff's repeated responses . . . [that] the floor drains were installed when the building was built . . . [and] the original defendant owner . . . used the building . . . to store his oil delivery trucks.

"The court concludes that if the plaintiff is unwilling and/or unable to provide the basic minimum information—which is his burden of production/proof. The court further concludes that . . . the plaintiff has not put forward [any] evidence except attempting to shift the burden of production to the defendant[s], contrary to the rules of practice.

"Hence, the court grants the motion for summary judgment to all counts." From this judgment, the plain-

tiff now appeals.

The plaintiff claims on appeal that the trial court improperly rendered summary judgment because the defendants failed to meet their burden of showing that no genuine issues of material fact existed and that they were entitled to judgment as a matter of law with respect to each of the causes of action alleged in the complaint. The plaintiff further claims that it provided evidence from which, if credited, a fact finder reasonably could infer that the pollution on its property came from the defendants' property via the drainpipe, thus establishing the culpability of one or all of the defendants. According to the plaintiff, at the very least, this evidence raised a genuine issue of material fact regarding the alleged flushing of contaminants down the building's floor drains and entitled the plaintiff to a trial on the merits of its complaint. We agree that the defendants failed to meet their burden of showing the absence of a genuine issue of material fact that would entitle them to summary judgment as a matter of law.

We begin with generally applicable principles of law, including our standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact . . . . [T]he party moving for summary judgment is held to a strict standard. [The moving party] must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . A material fact is a fact that will make a difference in the result of the case. . . . Because the court's decision on a motion for summary judgment is a legal determination, our review on appeal is plenary." (Citations omitted; internal quotation marks omitted.) *Walker* v. *Housing Authority*, 148 Conn. App. 591, 596, 85 A.3d 1230 (2014). "[W]e must [therefore] decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *McFarline* v. *Mickens*, 177 Conn. App. 83, 90, 173 A.3d 417 (2017), cert. denied, 327 Conn. 997, 176 A.3d 557 (2018).

Having reviewed the summary judgment record, including the pleadings, affidavits and other proof submitted by the parties, as well as the briefs and arguments before this court, we conclude that genuine issues of material fact exist that should have precluded the court from rendering judgment in favor of the defendants as a matter of law.

To avoid summary judgment, the plaintiff was not required to prove its causes of action to the satisfaction of the trial court. "In ruling on a motion for summary judgment, the court's function is not to *decide* issues of material fact . . . but rather to determine whether any such issues exist." (Emphasis added; internal quotation marks omitted.) *Episcopal Church in the Diocese of Connecticut* v. *Gauss*, 302 Conn. 408, 421–22, 28 A.3d 302 (2011), cert. denied, 567 U.S. 924, 132 S. Ct. 2773, 183 L. Ed. 2d 653 (2012). Moreover, "[a]n important exception exists . . . to the general rule that a party opposing summary judgment must provide evidentiary support for its opposition, [although] that exception has been articulated in our jurisprudence with less frequency than has the general rule. On a motion by the defendant for summary judgment the burden is on [the] defendant *to negate each claim as framed by the complaint*. . . . It necessarily follows that it is only [o]nce [the] defendant's burden in establishing his entitlement to summary judgment is met [that] the burden shifts to [the] plaintiff to show that a genuine issue of fact exists justifying a trial." (Emphasis added; internal quotation marks omitted.) *Baldwin* v. *Curtis*, 105 Conn. App. 844, 850–51, 939 A.2d 1249 (2008).

The defendants' motion for summary judgment, like the court's memorandum of decision granting that motion, does not attempt to delineate or explain the substantive law governing any of the plaintiff's common-law or statutory claims. In particular, the defendants fail to set forth how the purported deficiencies in the evidentiary record identified in the motion for summary judgment necessarily establish a lack of a genuine issue of material fact with respect to any particular element of any of the causes of action alleged in the complaint. In the absence of such analysis, we are left to speculate as to the precise nature of the defendants' summary judgment claims and whether and how they are applicable to the thirty counts of the complaint. We decline to do so. After all, the defendants have the burden of establishing their entitlement to summary judgment, and courts must "hold the movant to a strict standard." (Internal quotation marks omitted.) *Baldwin* v. *Curtis*, supra, 105 Conn. App. 848; see also *Rickel* v. *Komaromi*, 144 Conn. App. 775, 792, 73 A.3d 851 (2013) ("[i]n assessing a motion for summary judgment, we hold the movants to their burden of showing that it is quite clear what the truth is" (internal quotation marks omitted)).

Moreover, rather than demonstrating how they met the legal standard for granting a motion for summary judgment, the defendants' motion for summary judgment principally is founded on their argument that the plaintiff failed to answer certain interrogatories served on it by the defendants. To the extent that the court's granting of summary judgment focused too narrowly

on this argument and thus could be construed as sanctioning the plaintiff for some perceived failure to comply with discovery, summary judgment is a wholly improper vehicle by which to do so. See generally *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 17, 776 A.2d 1115 (2001) (articulating requirements for imposition of discovery sanctions and reiterating that "[t]he sanction of dismissal should be imposed only as a last resort, and where it would be the only reasonable remedy available to vindicate the legitimate interests of the other party and the court" (internal quotation marks omitted)).

Finally, even if we were able to determine that the defendants met their initial burden of demonstrating the absence of any genuine issue of material fact, we would agree with the plaintiff that it presented evidence in opposition to the motion for summary judgment that demonstrated its entitlement to a trial. As the defendants conceded at oral argument before this court, the trial court improperly seemed to have determined that, to prevail in its opposition to summary judgment, the plaintiff needed to produce evidence of who placed contaminants into the drainpipe, the nature of those contaminants, how the contaminants came to be in the drainpipe, and when this occurred. The plaintiff certainly was not required, in defense of summary judgment, to provide the defendants or the court with any and all evidence needed to prove its case at trial. It was enough to present evidence that raised a disputed issue of material fact that needed to be resolved by a fact finder, thus defeating the defendants attempt to show the nonexistence of any disputed material facts. The plaintiff met this obligation.

In his sworn affidavit, Jones averred that "there was a buried metal pipe which exited the abutting building at 24 Marietta Street onto [the plaintiff's property] . . . ." Jones further averred that contaminants were found in soil samples taken from areas on the plaintiff's property in which there were breaks in the piping, and that "[t]he residue samples from the [piping] showed higher concentrations of the same type[s] of contaminants that were found in the soil." Jones' affidavit and accompanying report additionally tends to demonstrate that the types of oil like contaminants found in the soil samples were consistent with the types of businesses and activities that had operated at 24 Marietta Street, and thus provided an additional causal link between the contaminants found on the plaintiff's property and the activities of the defendants.[9] The defendants do not argue that Jones' affidavit and report were improper summary judgment evidence. The affidavit of the defendant Kenneth Maratea also reflects that the defendants or their tenants maintained exclusive control over the premises for the duration of their ownership of the property. A trier of fact might reasonably infer from the aforementioned evidence that the contaminants in

the plaintiff's soil came from the drainpipe attached to the defendants' building and that, given their exclusive control over the property, the defendants, either directly or through negligence, were responsible for allowing the contaminants to enter the drain. It is true that the defendant Kenneth Maratea, in his answer to an interrogatory, wrote that the floor drain was somehow sealed or closed up. Nevertheless, viewed in the light most favorable to the nonmoving party, the proffered evidence clearly establishes disputed issues of material fact that entitle the plaintiff to a trial on the merits, leaving such factual disputes to be resolved at trial rather than by the trial judge in adjudicating a motion for summary judgment.

We conclude that there are genuine issues of material fact that preclude the granting of summary judgment. The trial court's conclusions to the contrary are not legally and logically correct and are not supported by the record. Accordingly, the court improperly granted the defendants' motion and rendered summary judgment in favor of the defendants.

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

[1] Kathleen Bednarcik is named as a defendant in her individual capacity and in her representative capacity as both the executrix of the estate of George Bednarcik and as trustee of a revocable trust in her own name. George Bednarcik originally was named a defendant but died during the pendency of the action.

[2] General Statutes § 22a-16 provides in relevant part: "[A]ny person, partnership, corporation, association, organization or other legal entity may maintain an action in the superior court for the judicial district wherein the defendant is located, resides or conducts business . . . for declaratory and equitable relief against . . . any person, partnership, corporation, association, organization or other legal entity . . . for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction . . . ."

[3] General Statutes § 22a-452 provides in relevant part: "(a) Any person, firm, [or] corporation . . . which contains or removes or otherwise mitigates the effects of oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes resulting from any discharge, spillage, uncontrolled loss, seepage or filtration of such substance or material or waste shall be entitled to reimbursement from any person, firm or corporation for the reasonable costs expended for such containment, removal, or mitigation, if such oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes pollution or contamination or other emergency resulted from the negligence or other actions of such person, firm or corporation. . . ."

[4] CERCLA, also known as the Superfund Act, was enacted "in response to the serious environmental and health risks posed by industrial pollution" and "was designed to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." (Internal quotation marks omitted.) *Burlington Northern & Santa Fe Railway Co.* v. *United States*, 556 U.S. 599, 602, 129 S. Ct. 1870, 173 L. Ed. 2d 812 (2009).

[5] Specifically, paragraphs seven, eight, nine, and fifteen of the operative complaint provide in relevant part: "7. When the [building at 24 Marietta Street was constructed], George Bednarcik . . . intentionally cause[d] two interconnected floor drains to be installed in the building which was then piped out and onto the property now known as 0 Marietta Street . . . without the knowledge or permission of the property owner . . . .

"8. George Bednarcik . . . intentionally [buried] the floor drainpipe exiting the building . . . onto the abutting property . . . to hide his knowingly illegal activity of trespass and draining hazardous material[s]. . . .

"9. . . . [A]ll of the [d]efendants . . . had knowledge of, or reasonably

should have had knowledge of the illegal and deceptive actions of . . . George Bednarcik. . . .

"15. . . . [T]he [d]efendants knew or should have known, in the exercise of due care and reasonable inspection, that dangerous, hazardous and toxic levels of oil, solvents, hydrocarbons, metals and the like were being flushed down the floor drains and onto the abutting property and into the ground water."

[6] At the hearing on the motion for summary judgment, the defendants' counsel summarized his argument as follows: "So, the claim in the motion for summary judgment is if the plaintiff cannot prove when and how and who flushed the contaminants down the drain, he can't prove his case. And, therefore . . . summary judgment should enter for the defendants because without proof . . . of all these flushing, the plaintiff has no case."

[7] In addition to Jones' affidavit, the plaintiff submitted, inter alia, affidavits of the defendants Kenneth Maratea, Ellen Maratea, and Kathleen Bednarcik; certified records from the Department of Motor Vehicles; and building permits for the 24 Marietta Street property.

[8] At oral argument on the motion for summary judgment, the plaintiff, in addition to arguing that a property owner has strict liability under both the federal and state statutes for any contamination that emanates from the owner's property, argued that "if a landlord owns a piece of property and they have multiple tenants, that if the landlord can determine who dumped what down . . . their drains and contaminated the neighbors, then . . . the obligation is on them to prove it. If they can't prove it, it's joint and several liability."

[9] Jones averred in his affidavit that "laboratory results of the contaminants found in the soil resembled diesel fuel or #2 heating oil however based on the absence of volatile organic compounds (VOC's) and the presence of elevated metals, crankcase oils may also be a source." The report stated that city directory listings showed that the 24 Marietta Street building had been occupied at various times by various types of automobile and motorcycle repair businesses and clubs, a house cleaning operation, and various contractors. The defendant Kathleen Bednarcik also averred in her affidavit that George Bednarcik had used the building for a number of years as a parking garage for an oil truck.

---